**MADE JS-6**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SOLE SURVIVOR CORP. | ) | No. CV 07-3858-GW |
| | ) | |
| Appellant(s), | ) | **DECISION RE APPEAL FROM THE** |
| | ) | **UNITED STATES BANKRUPTCY COURT** |
| v. | ) | **FOR THE CENTRAL DISTRICT OF** |
| | ) | **CALIFORNIA, BANKRUPTCY CASE No. 04-** |
| PAUL BUXBAUM, et al. | ) | **17544-MT** |
| | ) | |
| Appellee(s). | ) | |
| | ) | |

**Sole Survivor Corp. v. Buxbaum (In re Sole Survivor Corp.)**, Case No. CV 07-3858
      Decision re Appeal from the United States Bankruptcy Court for the Central
      District of California Bankruptcy Case No. 04-17544-MT

## I. Introduction

Appellants Sole Survivor Corp. ("Sole Survivor") and Donald N. Love ("Love") (together "Appellants") appeal a Bankruptcy Court Order entered on May 24, 2007, denying Sole Survivor's Ex Parte Motion for an Order to Show Cause re: Contempt (the "Ex Parte Motion"). Appellants contend that Appellees - the Buxbaum Group, LLC ("Buxbaum"), Paul Buxbaum, and Sole Asset Holdings, Inc. ("SAH") (collectively "Appellees") - violated the automatic stay imposed by 11 U.S.C. § 362[1] by implementing a sham transfer of all of Sole Survivor's assets to a strawman corporation followed by a foreclosure sale.

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure ("FRBP") and Local Rule 7, the Court finds the matter appropriate for disposition without oral argument.[2] The Court now DISMISSES the appeal for want of jurisdiction.

## II. Factual and Procedural Background

Sole Survivor's Ex Parte Motion was filed on March 14, 2007. See Docket Sheet for U.S. Bankruptcy Court, Central District of California Case Number 1:04-bk-16544-MT, Exhibit 1 in Appellants' Opening Appendix on Appeal ("Appellants' App.") at page 3. The factual background of this matter is fairly byzantine, and is repeated here only in enough detail to provide the necessary context, as this appeal can be resolved upon consideration of certain threshold matters.

Sole Survivor was a manufacturer of sportswear and related products under a number of different marks. See Declaration of Donald N. Love ("Love Decl.") ¶¶ 2-3, attached as Exhibit 3 to Appellants' App. at 39. At all relevant times, Love was Sole Survivor's only shareholder and, apparently, its only director and officer. Id. ¶ 1, Appellants' App. at 38.

In 2003 and 2004, Sole Survivor began to experience severe cash flow problems, and turned to Buxbaum with the intent of having Buxbaum provide both a secured credit facility as well as expertise in negotiating with creditors for the purpose of obtaining either discounts or workout arrangements with those creditors. Id. ¶ 7, Appellants' App. at 40. In 2004, Sole Survivor and Buxbaum entered into a business relationship, in which Buxbaum extended Sole Survivor a significant amount of credit[3] in exchange for a

---

[1] Unless otherwise indicated, all references to statutes herein are to Title 11 of the United States Code.

[2] This Court finds that the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. See Matter of Thirtyacre, 36 F.3d 697, 701 (7th Cir. 1994).

[3] Buxbaum made two loans to Sole Survivor in the aggregate principal amount of $870,000, and provided a secured revolving credit facility in the amount of $4 million (the "Buxbaum Loans"). Love Decl. ¶¶ 8-10, Appellants' App. at 40-42.

security interest in "virtually all" of its assets. See Love Decl. ¶¶ 7-10, Appellants' App. at 40-42; Declaration of Paul Buxbaum ("Buxbaum Decl.") ¶ 7, attached as part of Exhibit 20 to Appellees' Opening Appendix on Appeal ("Appellees' App.") at page 273.[4] By November 2004, Buxbaum had loaned $2,984,064 to Sole Survivor (Buxbaum Decl. ¶ 7, Appellees' App. at 273), and the latter was in default on its obligations to Buxbaum. Id. ¶ 9, Appellees' App. at 274. On November 13, 2004, Buxbaum sent Sole Survivor (and its creditors) a "Notice of Default and Exercise of Reservation of Rights," and initiated a foreclosure sale. Id. ¶ 10, Appellees' App. at 274; and Compendium, Exhibit 14, Appellants' App. at 186-88. Notices of Sale were published in the Los Angeles Times on November 21 and 28, 2004. Compendium, Exhibits 15 and 16, Appellants' App. at 191 and 194.

On November 29, 2004, Camelot Enterprises, which had been Sole Survivor's landlord until June of 2004, and was afterward its judgment creditor, initiated Sole Survivor's bankruptcy case by filing an involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code (the "Involuntary Petition"). Compendium, Exhibit 17, Appellants' App. at 197-98. Buxbaum was served a copy of the summons and other notices by mail on December 2, 2004. Id., Exhibit 20, Appellants' App. at 207-08.

In his declaration, Buxbaum stated that "because of" the Involuntary Petition, the foreclosure sale was continued to December 7, 2004. Buxbaum Decl. ¶ 11, Appellees' App. at 275. According to a Bill of Sale dated December 1, 2004, on that date all of Sole Survivor's assets were transferred to an entity called Gramicci, Inc. ("Gramicci") for the sum of $5,000.[5] See Bill of Sale attached as Exhibit 8 to Appellants' App. at 246-50. Gramicci was apparently created on November 22, 2004. See Appellants' App. at 347. On December 6, 2004, SAH was created. Id., at 211. The foreclosure sale of the assets of Sole Survivor (which were at that point owned by Gramicci) went forward on December 7, 2004. Buxbaum Decl. ¶ 14, Appellees' App. at 276. Following the foreclosure sale, at which the Buxbaum Group was the successful bidder (having proffered its credit bid of $3,025,000), the Sole Survivor assets were transferred to SAH. Id., Appellants' App. at 215-16. Love subsequently entered into a consulting agreement with SAH. Appellees' App. at 332-37.

Neither Love nor Sole Survivor contested the Involuntary Petition. On January 24, 2005, the Bankruptcy Court entered its Order of Relief and Order to File Schedules and Statement of Affairs (the "Order of Relief"). Six separate meetings of creditors were noticed under Bankruptcy Code § 341(a), but Sole Survivor and Love never appeared and no meeting of creditors was ever conducted. Buxbaum Decl. ¶ 15 & Ex. G, Appellees' App. at 276 and 306-27). Sole Survivor and Love never filed the Debtor's Schedules of

---

[4] Buxbaum's security interest in Sole Survivor's assets was perfected by the filing of UCC-1 financing statements with the California Secretary of State. See Buxbaum Decl. ¶ 7, Appellees' App. at 273; and Exhibits 6 and 13 attached to Evidentiary Compendium of Exhibits ("Compendium") which is part of Exhibit 7 to Appellants' App. at 127-29 and 181-84.

[5] Love contends that he could not have signed the documents related to the sale of Sole Survivor's assets to Gramicci - i.e., the Bill of Sale and the "Joint Unanimous Written Consent of Board of Directors and Shareholders on Sole Survivor Corporation" (to which he is the sole signatory) - before December 6, 2004, and that they were not forwarded to him for his review until December 4, 2004.

Assets and Liabilities or Statement of Financial Affairs in compliance with the Order for Relief.  Id.  On August 12, 2005, the Bankruptcy Court entered an order dismissing the case "[f]or reasons orally stated on the record."[6]  Appellants' App. at 242-43.  On June 7, 2006, the Clerk of the Bankruptcy Court entered an order administratively closing the bankruptcy case because of the August 12, 2005 Order and "[s]ince it appears that no further matters are required[,] . . . that this case remain open, or that the jurisdiction of this Court continue . . . ."  Appellants' App. at 245.

Sole Survivor's original contention in its Ex Parte Motion - which did not discuss the transfer to Gramicci - was that the foreclosure sale violated the automatic stay.[7]  See Appellants' App. at 32.  The Ex Parte Motion was not directly calendared.  See Appellants' App. at 435.  Instead, the Bankruptcy Court directed Sole Survivor to file a motion to reopen the bankruptcy case, which it did.  See Exhibit 19 to Appellees' App.

On May 16, 2007, the Bankruptcy Court issued a tentative ruling denying Sole Survivor's motion to reopen the bankruptcy case.  Appellants' App. at 419.  That ruling stated in part:

> First, a motion to reopen is not applicable here.  The bankruptcy case was dismissed because the debtor failed to appear at several 341(a) meetings and no schedules were ever filed.  9th Cir. law clearly states that a dismissed case cannot be reopened, see In re Pavelich, 229 B.R. 777, 781 (9th Cir. 1999); In re Income Property Builders, Inc., 699 F.2d 963, 965 (9th Cir. 1982).
>
> Second, even if the court were to deem the motion a motion to vacate dismissal, the one year time period to bring such a motion has passed.  Under F.R.C.P. Rule 60, made applicable by F.R.B.P. Rule 9024, a court may relieve a party from an order for fraud, but the motion shall be made not more than one year after the order was entered.

Id.  Thereafter, on that same day, a hearing was held as to the motions.  After listening to arguments of attorneys for Sole Survivor and Buxbaum plus statements from the Chapter 7 Trustee (i.e. Diane C. Weil, Esq.) and considering the moving and opposing papers and concomitant evidence, Bankruptcy Judge Maureen Tighe found and concluded that: 1) Love was the "main officer of the Debtor" during the relevant period; 2) Love was "participating" in the operations of Sole Survivor, including obtaining a consulting agreement with Gramicci following the sale of Sole Survivor's assets to Gramicci; 3) Sole Survivor/Love waited two and a half years after the foreclosure sale (of which Love was aware) before filing the Ex Parte Motion claiming that the foreclosure sale and

---

[6] The transcript of the August 12, 2005 hearing was not included in the parties' Appendices.

[7] Appellants now contend that, because soliciting a debtor's signature on documents that assign or sell the debtor's right, title, or interest in any type of property constitutes a violation of § 362(a)(3), the transfer to Gramicci was void as a matter of law so that the foreclosure sale was still a violation of the automatic stay.  Alternatively, they argue that the sale is subject to avoidance under § 549, because a debtor's freedom to make transfers during the "gap-period" under authority of § 303(f) is limited to the extent that it receives value for the transfer.  Thus, the most that could have been removed from the bankruptcy estate as a result of the purported sale would be $5,000.

transfer of assets violated the automatic stay; 4) Sole Survivor/Love had not appeared at any of the Section 341(a) meetings, filed any Schedule of Assets and Liabilities or Statement of Financial Affairs, or otherwise participated in the Chapter 7 proceedings; 5) both the Trustee and the Bankruptcy Court were aware of the transfer and foreclosure sale before deciding in August 2005 to dismiss the Chapter 7 bankruptcy; 6) the Trustee had reasonably concluded before the dismissal that there was no chance of some return to unsecured creditors and that, even if the transfer was voided, the only possible benefit would be to the remaining secured creditor CIT; 7) the "case was dismissed for good reason and not due to fraud on the Court;" and 8) the Ex Parte Motion would be denied because, in essence, "[i]t would be a waste of time." Appellants' App. at 451-54.

On May 24, 2007, the Bankruptcy Court entered its Order Denying Motion to Reopen (Appellees' App. 349-51) and its Order Denying the Ex Parte Motion (Appellants' App. 457-63). Appellants have appealed the latter order, but not the former, as they contend that the Bankruptcy Court had jurisdiction to issue an order to show cause even without reopening the bankruptcy case. See Exhibit 15 to Appellants' App.

## III. Legal Standard

It is noted that Appellants' Brief does not contain a statement of the appropriate standard of review on appeal as required by FRBP 8010(a)(1)(A). District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). In considering a bankruptcy appeal, a district court must review findings of fact under a "clearly erroneous" standard and conclusions of law de novo. Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000). Questions of statutory construction and interpretation are conclusions of law and are reviewed de novo. In re MacIntyre, 74 F.3d 186, 187 (9th Cir. 1996).

A court's denial of a motion for contempt is generally reviewed for abuse of discretion. See Irwin v. Mascott, 370 F.3d 924, 931 (9th Cir. 2004). It has been suggested, however, that less deference should be applied in the context of an automatic stay violation. See Jove Eng'g v. IRS, 92 F.3d 1539, 1546 (11th Cir. 1996). Whether a bankruptcy court has jurisdiction to issue a contempt order after dismissal has been entered and after a case has been dismissed and/or closed is a question of law.

"[T]he federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." United States v. Hays, 515 U.S. 737, 742 (1995) (citation, internal quotes, and brackets omitted). The party who invokes federal jurisdiction on appeal bears the burden of establishing standing. United States v. San Francisco, 979 F.2d 169, 171 (9th Cir. 1992).

## IV. Analysis

### A. Appellants Lack Standing to Bring this Appeal.

#### 1. Love has no standing to bring this appeal.

Sole Survivor was the only debtor in the underlying bankruptcy case. Love was not a debtor or otherwise a party in that matter.

The Ex Parte Motion was brought only by Sole Survivor, and Love is not named as a moving party. The Order denying the Ex Parte Motion refers only to Sole Survivor as the moving party.[8]

Given the fact that Love was not a party or movant as to the Ex Parte Motion, he lacks standing to challenge its denial on appeal.

### 2. As a general rule, the bankruptcy court has jurisdiction over contempt proceedings arising from violations of the automatic stay even after a case has been dismissed.

The Bankruptcy Court's jurisdiction to consider the Ex Parte Motion did not depend on whether the bankruptcy case could be reopened. The Bankruptcy Code does not provide for reopening a case that has been dismissed. As the Bankruptcy Appellate Panel ("B.A.P.") stated in Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich), 229 B.R. 777, 781 (B.A.P. 9th Cir. 1999):

> Reopening a dismissed case is an oxymoron -- since the consolidated cases were dismissed rather than closed, there are no closed cases to reopen. See Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Bldrs., Inc.), 699 F.2d 963 (9th Cir. 1983). Moreover, the Bankruptcy Code differentiates closing a case from dismissing a case in a fashion that arguably treats closing and dismissal as mutually exclusive. See, e.g., 11 U.S.C. §§ 349-350(a).
>
> The procedural alternative is merely to make a motion or file an adversary proceeding on a retained jurisdiction theory in a dismissed case. [Citations].

The parties disagree about whether a "retained jurisdiction theory" would permit the Bankruptcy Court to entertain contempt proceedings. 11 U.S.C. § 362(k)(1) provides that "individuals" injured by a willful violation of the automatic stay may recover damages.[9] "For other debtors [who are not 'individuals'], contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay." Johnston Envt'l Corp. v. Knight (In re Goodman), 991 F.2d 613, 620 (9th Cir. 1983) (brackets in original). The B.A.P. has held that actions for damages based on violations of the automatic stay are not rendered moot by dismissal of the underlying bankruptcy. See, e.g., Davis v. Courington (In re Davis), 177 B.R. 907, 911 (B.A.P. 9th Cir. 1995). Similarly, after a case has been dismissed, ". . . the bankruptcy court retains

---

[8] Love was named as a movant in the Motion to Reopen the Bankruptcy Case wherein he is characterized as an "unsecured creditor/equity interest holder." However, as noted above, the motion to reopen was not made a part of the present appeal.

[9] Sole Survivor, as a corporation, cannot utilize 11 U.S.C. § 362(k) as a vehicle for obtaining damages arising from a violation of the automatic stay. See In re Colortron, Inc., 210 B.R. 823, 828 (B.A.P. 9th Cir.), aff'd in part and rev'd in part on other grounds, 165 F.3d 35 (9th Cir. 1997); In re Goodman, 991 F.2d 613, 616 (9th Cir. 1993).

subject matter jurisdiction to interpret orders entered prior to dismissal of the underlying bankruptcy case . . . and to dispose of ancillary matters." Tsafaroff v. Taylor (In re Taylor), 884 F.2d 478, 481 (9th Cir. 1989).

As noted in In re Income Property Builders, Inc., 699 F.2d 963, 965 (9th Cir. 1982): "[a]n order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and is not an order closing." In Income Property, the B.A.P. dismissed an appeal as moot where the debtor sought to reimpose the automatic stay after the dismissal of the underlying bankruptcy case. It held that the stay arises by operation of bankruptcy law and that after the dismissal of the underlying case it no longer had the power to restore the proceeding or to reimpose the stay. Id. at 964. Courts faced with requests to reopen a dismissed bankruptcy case under § 350(b) have relied upon Income Property in denying the requests. See, e.g., In re Woodhaven, Ltd., 139 B.R. 745, 747-48 (Bankr. N.D. Ala. 1992) ("[A] closed case and a dismissed case represent totally different results; closing a case contemplates a full estate administration and the completion of the bankruptcy process, whereas dismissing a case restores the assets and parties to their prepetition status, as if the case had never been filed.").

In Aheong v. Mellon Mortg. Co. (in Re Aheong), 276 B.R. 233 (B.A.P. 9th Cir. 2002), however, the B.A.P. held the bankruptcy court had jurisdiction to annul an automatic stay under either ancillary or "arising under" jurisdiction notwithstanding the dismissal of the case and regardless of whether the case was reopened. Appellees note that no court has held that "ancillary matters" include contempt of court. However, a party seeking an OSC re contempt is not seeking new relief, but is simply seeking enforcement of a prior order. Id. at 241. The relief sought here is more akin to that sought in Aheong than the relief sought in cases where courts have found a lack of jurisdiction. Thus, the fact that the bankruptcy case had been dismissed, did not, by itself, deprive the court of jurisdiction. Similarly, the Clerk's administrative act of ordering the bankruptcy case "closed" did not have any jurisdictional significance. Cf. Menk v. Lapaglia (in Re Menk), 241 B.R. 896 (B.A.P. 9th Cir. 1999) (no jurisdictional requirement that a closed bankruptcy case be reopened before "arising under" jurisdiction can be exercised).

      3. Sole Survivor and Love lacked standing to initiate contempt proceedings and therefore lack standing to bring this appeal.

Appellees also contend that Sole Survivor lacked standing to initiate contempt proceedings because it was hopelessly insolvent. This Court agrees. Only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order. In re Fondiller, 707 F.2d 441, 442 (9th Cir. 1983). This standing limitation is more restrictive than the requirement for Article III standing. As the B.A.P. observed:

> Bankruptcy standing is narrower than Article III standing. Spenlinhauer v. O'Donnell (In re Spenlinhauer), 261 F.3d 113, 117 (1st Cir. 2001); Cult Awareness Network v. Martino (In re Cult Awareness Network), 151 F.3d 605, 607 (7th Cir. 1998). * * * * A "person aggrieved" is one

whose property is diminished, burdens are increased, or rights are impaired by order on appeal. In re El San Juan Hotel, 809 F.2d 151, 154 (1st Cir. 1987).

Great Rd. Serv. Ctr., Inc. v. Golden (In re Great Rd. Serv. Ctr., Inc.), 304 B.R. 547, 550 (B.A.P. 1st Cir. 2004); see also Kane v. Johns-Manville Corp., 843 F.2d 636, 642 n.2 (2d Cir. 1988). As stated by the Ninth Circuit in In re Fondiller, 707 F.2d at 442-43:

> Only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order. Hartman Corp. of America v. United States, 304 F.2d 429, 431 (8th Cir. 1962); see Skelton v. Clements, 408 F.2d 353 (9th Cir.), cert. denied, 394 U.S. 933, 89 S. Ct. 1202, 22 L. Ed. 2d 462 (1969). Thus, a hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate. E.g., Skelton v. Clements, 408 F.2d at 354. Such an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights. In re Capitano, 315 F. Supp. 105, 107 (E.D. La. 1970).

At the hearing, the Bankruptcy Judge concluded that:

> I think [the order of dismissal] was a proper analysis of whether or not this was a bankruptcy case that should continue. It was clear that it was of no economic benefit to continue [the bankruptcy case] and that it was properly dismissed. So I see no reason to revisit that. And because of that, I'm not going to grant the ex-parte application because there would be no sense in doing that. It would incur a lot of legal fees and not bring any return at all to unsecured creditors. It would be a waste of time.

See Appellants' App. at 454. Additionally, the Bankruptcy Trustee stated at the hearing that both she and the Bankruptcy Court had been advised about both the transfer to Gramicci and the foreclosure. She further commented:

> And did I think that the transfer from Sole Survivor to Gramicci was avoidable? Probably. But as the Court aptly points out, to what benefit? There were two liens encumbering the vast majority of the assets. This was why the Buxbaum Group came in. And my ultimate conclusion was that yes, there probably was litigation that could be brought, but the chances of success were very limited.

Id. at 448.

Obviously, Appellants are now asserting that they suffered pecuniary harm from

Appellee's purported violation of the automatic stay (and, therefore, that they have a pecuniary interest that was affected by the Bankruptcy Court's denial of the Ex Parte Motion). It is clear from the Bankruptcy Judge's and the Trustee's comments, however, that the question whether Sole Survivor or Love could have had an interest that was "directly and adversely affected pecuniarily" by Buxbaum's supposed violation of the automatic stay was already considered and decided when the bankruptcy case was dismissed. Certainly, Appellants had the opportunity to demonstrate that they had such an interest while the bankruptcy case was pending, and failed to do so. To find that they now have standing to raise the violation of the automatic stay would conflict with the finding implicit in the Bankruptcy Court's Order of Dismissal that there was no economic benefit to continuing the bankruptcy case.

Even assuming that the Bankruptcy Court's Order of Dismissal does not have any preclusive effect with respect to the issue of standing, the only indication that Love and/or Sole Survivor suffered pecuniary harm as a result of the foreclosure sale comes in the form of Love's own estimate of the "going concern/reorganization value" of the company of between $12 million and $15 million. However, the Debtor's total assets prior to the foreclosure sale were listed on Sole Survivor's 2004 tax return as $3,680,529. See Appellants' App. at 221. By Appellants' own admission, as of the Petition date, Sole Survivor had at least $5,684,676 in secured debt. (Motion to Reopen, Appellees' App. 14:4-6). Appellees' estimate the secured debt at approximately $7,221,016.13. There is little reason to question the Bankruptcy Judge's and the Trustee's conclusion that, even if the Gramicci transfer were avoidable and the foreclosure sale undone, it would have been fruitless to keep the Bankruptcy case open.

Thus, Sole Survivor and Love cannot assert that they suffered any pecuniary injury from any supposed violation of the automatic stay. As a consequence, they cannot assert that they have a pecuniary interest that was affected by the Bankruptcy Court's denial of the Ex Parte Motion. Because Appellants lack standing, the Appeal must be dismissed for want of jurisdiction.

B. The Bankruptcy Court's Order Denying the Ex Parte Motion Was Not Reversible Error.

Assuming *arguendo* that Sole Survivor had standing to bring the Ex Parte Motion seeking an order to show cause re contempt as to Appellees' purported violation of the automatic stay, it is readily apparent that the Bankruptcy Judge did not commit any error in dismissing the motion.

As noted above, Sole Survivor as a corporation could not bring the contempt motion pursuant to 11 U.S.C. § 362(k). See In re Goodman, 991 F.2d at 616. As observed in 3 Collier on Bankruptcy, 15th Edition Revised § 362.11[3] at 362-126 (2008):

> Several courts have considered whether section 362(k) provides all debtors with a remedy against stay violators or whether its scope is limited by the reference in section 362(k) to an "individual" injured by a stay violation. The question is of some importance because, although a stay

> violation may be punished as contempt, the imposition of a
> remedy under a civil contempt procedure may be subject to
> a stricter standard than is imposed by section 362(k) . . . .
> Moreover, the power of a bankruptcy court to impose a
> civil contempt sanction is subject to more extensive
> procedural requirements than are present in affording a
> remedy under section 362(k). [Footnote omitted.]

A motion for contempt for violation of the automatic stay may be made pursuant to 11 U.S.C. § 105(a) and Rule 9020 of the FRBP.

The Bankruptcy Judge correctly pointed to a number of factors which justify a denial of the contempt motion in the exercise of the judge's discretion. First, the motion was unconscionably late. Sole Survivor was aware of the transfer of its assets to Gramicci in December of 2004 (indeed it participated in the transfer) as well as the December 7th foreclosure sale. Sole Survivor waited more than two years and four months to bring its contempt motion even though the bankruptcy case was dismissed in August of 2005 and closed by the Bankruptcy Court Clerk in June of 2006. As observed in Matthews v. Rosene, 739 F.2d 249, 251 (9th Cir. 1984), in the context of orders issued in violation of the automatic stay, a bankruptcy court, as a court of equity, must be guided by equitable principles in exercising its jurisdiction. Hence, the Bankruptcy Court can consider whether a party has acted in a timely fashion in seeking discretionary relief.

Second, Sole Survivor is guilty of unclean hands in the present situation. Not only did Sole Survivor fail to act in a timely manner, it itself was involved in the very conduct which it now says constituted a violation of the automatic stay. The transfer of its assets to Gramicci was pursuant to a "Bill of Sale" wherein it agreed to said transfer in exchange for $5,000. Furthermore, not only did Sole Survivor fail to inform the Bankruptcy Court and/or the Bankruptcy Trustee of the transfer/foreclosure sale but it violated the Bankruptcy Court's Order of Relief by failing to file its Schedule of Assets and Liabilities and Statement of Financial Affairs which would have provided the information to the Court and the Trustee. Additionally, Sole Survivor failed to appear or otherwise participate in six separate meetings of creditors wherein it could have sought to address the violation of the automatic stay issue which it now seeks to litigate.

Third, both the Bankruptcy Judge and the Trustee were informed by the Appellees prior to the dismissal of the bankruptcy case as to "the transfer and the foreclosure, and CIT which provided [the Trustee] with copies of their security documents." Appellants' App. at 445. The Trustee concluded and the Bankruptcy Court agreed that, while the transfer was "avoidable," at that time there were two secured liens encumbering the vast majority of Sole Survivor's assets such that any action on the violation of the automatic stay would not generate any financial benefit to either the debtor or unsecured creditors. For that reason, and others, the bankruptcy case was dismissed. Given the conclusion that Sole Survivor was not injured by either the transfer or the foreclosure sale, there would be no basis to hold the Appellees in contempt as to their purported violation of the automatic stay. As stated in In re: A&J Auto Sales, Inc., 223 B.R. 839, 845 (D.N.H. 1998):

> Although . . . the bankruptcy court's contempt power
> allows it to award damages for violations of the automatic

9

stay, this power is discretionary. Thus, the bankruptcy court's decision not to award sanctions is only reviewed for an abuse of discretion. The bankruptcy judge determined that damages were inappropriate because the IRS had violated the stay in good faith and the debtor failed to present evidence of actual damages suffered as a result of the violation. The court sees nothing to suggest an abuse of discretion.

Judged by an abuse of discretion standard or even a less lenient standard, the Bankruptcy Court's decision to deny the Ex Parte Motion - assuming that the motion properly could have been reached - was not reversible error.[10] The Bankruptcy Court properly concluded that granting the Ex Parte Motion would be "a waste of time." Harsher conclusions could have been drawn.

## V. Conclusion

For the reasons stated above, the appeal is dismissed because of Appellants' lack of standing.

Dated: This 22nd day of January, 2009.

_____
GEORGE H. WU
United States District Judge

---

[10] Notwithstanding Love's contention that the dates on the documents are wrong, it is clear, as evidenced by his signatures on the Bill of sale, Receipt of Payment, and Corporate Consent, that Love was aware of and facilitated and/or ratified the transfer of Sole Survivor's assets to Gramicci. See Appellees' App. 298-304. Love benefited from these transactions, because he subsequently entered into a consulting agreement with SAH under which he was paid $288,000 from January 2005 through March 2006, plus reimbursements for expenses and other costs. See Rubenstein Decl. ¶ 5-8 & Ex. J, Appellees' App. 278-79 and 332-37. Neither Sole Survivor nor Love contested the involuntary petition. Sole Survivor failed to meet any of its obligations under the Bankruptcy Court's orders, and, through its inaction, failed to avail itself of any of the benefits afforded by the Bankruptcy Code. It is difficult to imagine that any court would allow Appellants to invoke those protections more than two years later, and Appellants have not come close to making a creditable argument that it would be appropriate to allow them to do so here.